784 N.W.2d 886 (2010)
280 Neb. 163
Robert A. STRAUB, appellee,
v.
CITY OF SCOTTSBLUFF, a political subdivision, and League Association of Risk Management, appellants.
No. S-09-1121.
Supreme Court of Nebraska.
July 2, 2010.
*887 John W. Iliff and Jessica S. Wolff, of Gross & Welch, P.C., L.L.O., Omaha, for appellants.
Kristine R. Cecava, Sidney, and Michael J. Javoronok, Scottsbluff, of Javoronok & Neilan, for appellee.
*888 HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
The City of Scottsbluff and the League Association of Risk Management (collectively appellants) appeal the decision of the three-judge panel of the Nebraska Workers' Compensation Court, affirming the trial court's award. The trial court awarded Robert A. Straub the maximum weekly wage of $600 for 1 3/7 weeks of total temporary disability and $229.21 for 298 4/7 weeks for a 35-percent loss of earning power.

BACKGROUND
Straub is a sergeant with the Scottsbluff Police Department and was employed in that capacity when he suffered injuries as a result of two accidents within a 6-week period of time. The first accident occurred on June 25, 2006, when Straub was struck by a passing vehicle during a routine traffic stop. Straub recorded the traffic stop, and the recorded video was made part of the record as a DVD. From the DVD, it appears as though Straub was struck in his left hip by the side mirror of the passing vehicle. He also suffered a puncture wound to his lower leg. Straub stated that he did not know how his lower leg was punctured, but that it happened during the accident.
After the accident, Straub went to a hospital emergency room and stated that he was hurting "from [his] hips to [his] toes." The doctor who treated him recommended that Straub use ice and follow up as soon as possible with an orthopedist. The accident resulted in a fractured left iliac wing and lower back complaints with associated soft tissue injuries. Straub's chosen orthopedist recommended that Straub take some time off of work. Straub testified that he had begun taking days off at the time of the incident and had returned to work on Wednesday, June 28, 2006. Straub testified that he continued to have pain in his hip, lower back, and midback, and pain and numbness in his legs.
Straub further testified that he continued to have pain and that his orthopedist ordered an MRI. On August 7, 2006, while on his way to a hospital for the MRI, Straub's vehicle was hit by another vehicle. Straub had taken the day off from work and had taken his children to a babysitter's house. The accident occurred between the babysitter's house and the hospital. Straub testified that the impact occurred on the driver's side and that he was thrown forward in the vehicle. Straub testified that his chest, back, and neck ached immediately after the accident and that he later developed shoulder pain. Straub stated that he had braced himself against the vehicle's dashboard on impact and that he believed that was how his shoulder had been injured.
The Workers' Compensation Court found that both accidents were work related and compensable. Specifically, the trial court, citing Larson's Workers' Compensation Law,[1] determined that the car accident was compensable because Straub was on his way to a doctor's appointment due to injuries received during the first work-related incident. The trial court did not find sufficient evidence that Straub's shoulder injuries stemmed from a work-related accident, but did find sufficient evidence that his left hip, lower back, and left lower leg were injured. The trial court found that Straub had a 35-percent loss of earning power as a result of the accidents. The trial court then awarded $600 to Straub for 1 3/7 weeks for total temporary *889 disability and $229.21 per week for 298 4/7 weeks for a 35-percent loss of earning power. Appellants were also ordered to pay medical expenses for or on behalf of Straub, or to reimburse Straub or his health care provider.
Appellants appealed the decision of the trial court, and the three-judge panel of the Workers' Compensation Court issued an order of affirmance on review. Appellants appeal from that order, and we affirm the award.

ASSIGNMENTS OF ERROR
Appellants assign, restated and consolidated, that the trial court erred in determining that (1) the accident on August 7, 2006, occurred within the scope and course of Straub's employment, (2) Straub had a 35-percent loss of earning capacity, and (3) the DVD of the first accident shows that Straub's left hip was injured.

STANDARD OF REVIEW
On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[2]
In workers' compensation cases, an appellate court is obligated to make its own determinations regarding questions of law.[3]

ANALYSIS

STRAUB'S INJURIES on AUGUST 7, 2006, WERE COMPENSABLE
Appellants first argue that Straub's injuries on August 7, 2006, were not compensable injuries because they did not arise out of and in the course of his employment. The record indicates that after Straub's first accident, his orthopedist ordered an MRI to be administered at a Scottsbluff hospital. Straub was not working on the day of the appointment, and he drove from his house to the babysitter's house to drop off his children before driving to the hospital. The second accident occurred on the way to the hospital from the babysitter's house.
The trial court cited Kraus v. Jones Automotive, Inc.,[4] for the proposition that a trip serving a dual purpose was still compensable under certain circumstances. The dual purpose rule provides:
[I]f an employee is injured in an accident while on a trip which serves both a business and a personal purpose, the injuries are compensable as arising out of the course and scope of employment provided the trip involves some service to be performed on the employer's behalf which would have occasioned the trip, even if it had not coincided with the personal journey.[5]
In Kraus, the Court of Appeals held that a plaintiff who had been on a business trip from Omaha, Nebraska, to Lincoln, Nebraska, was acting within the course and scope of his employment even though he had embarked on a private errand. The record demonstrated that the plaintiff had driven from Lincoln toward Grand Island, Nebraska, on a personal errand, but had turned around and was returning to Omaha when he was killed in a one-vehicle accident.[6]
*890 The trial court also cited Larson's Workers' Compensation Law § 10.07, "Accident During Trip to Doctor's Office,"[7] which states that an accident occurring on a trip to a doctor's office or a place of testing ordered by the doctor is generally compensable if the original injury was also compensable. The trial court also pointed out that the Workers' Compensation Court routinely orders payment for mileage to and from doctor's visits and testing.
We have specifically declined to address this issue in the past.[8] And while some courts have rejected the rule found in Professor Larson's treatise,[9] other courts have allowed workers to recover for injuries sustained on the way to a medical appointment for a compensable injury.[10] We find Taylor v. Centex Construction Co.[11] particularly persuasive in this case.
In Taylor, the employee sustained an eye injury in the course of his employment. He was granted leave to go to the doctor. After the doctor's appointment, the employee stopped for lunch and to have the company truck serviced, and he then proceeded to drive back to work. While driving back to his jobsite, the employee was involved in a car accident and was injured. The employer argued that the second injury was not compensable, because it did not arise out of or in the scope of his employment and because he deviated from the most direct route back to work.[12]
The Kansas court found that because the workers' compensation statute required employees to undergo medical treatment for work-related injuries, an injury sustained on the way to such medical treatment occurred in the course and scope of his employment.[13] The court also found that there was nothing in the workers' compensation statute that required the employee to take the most direct route between the doctor's office and his place of employment, but only that the route selected be reasonable and practical, and one that would not materially delay the employee's return to work.[14]
The Nebraska Workers' Compensation Act, like the statutory scheme in Taylor, provides that if an employee fails to avail himself or herself of medical or surgical treatment, he or she can lose those benefits.[15] We have also allowed compensation for travel to and from necessary medical services in the past.[16] We find that an employee's injury which occurs en route to a required medical appointment that is related to a compensable *891 injury is also compensable, as long as the chosen route is reasonable and practical.
Having determined that an injury sustained on the way to a doctor's appointment is compensable, we apply the rule in Kraus[17] and Jacobs v. Consolidated Tel. Co.[18] Under our dual purpose rule, an injury arising out of a trip with both a business and a personal purpose is compensable if the trip was occasioned by a business purpose. We find that an employee who is injured while en route to a medical appointment for a covered injury is acting within the course and scope of his or her employment, as long as the route taken is reasonable and practical.[19] Much like in Kraus, Straub had completed his personal errand of dropping off his children at the babysitter's house and was continuing on the business errand of attending his medical appointment.
We therefore find appellants' first assignment of error to be without merit.

TRIAL COURT WAS NOT CLEARLY WRONG IN DETERMINING THAT STRAUB HAD 35-PERCENT LOSS OF EARNING CAPACITY
Appellants next argue that Straub did not present sufficient evidence that he sustained a 35-percent loss of earning capacity. We note first that upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[20] In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.[21]
The basis for the trial court's decision that Straub had a 35-percent loss of earning power was the report of the court-appointed vocational case manager. Under Neb.Rev.Stat. § 48-162.01(3) (Cum. Supp.2008), a court-appointed vocational case manager's opinion is entitled to a rebuttable presumption of correctness. The trial court also considered a rebuttal report.
The court-appointed vocational case manager's report stated that Straub was limited to "`Light'" physical activity, which represented a loss of earning capacity. That report estimated Straub's loss of earning power at 46 percent, including his shoulder injuries. The rebuttal report listed Straub's loss of earning capacity as somewhere between 0 and 15 percent, and placed him in the "Medium" range of physical capabilities.
The trial court determined that the court-appointed vocational case manager's report was rebutted in part, specifically as to the shoulder injuries and overhead reaching. The trial court concluded that considering the orthopedist's reports and the reports of the vocational counselors, Straub suffered a 35-percent loss of earning capacity. Appellants essentially argue that the court-appointed vocational case manager's report was not competent, and they argue that the trial court should not have given that report the weight that it did.
We note, however, that both the rebuttal report and the court-appointed vocational case manager's report state that Straub *892 has some restrictions due to his injuries. The trial court in its order recognized both reports and the differences between them and stated that it had considered both reports when making its decision. Thus, we cannot say that the trial court's decision was clearly wrong.
In conjunction with its assertion that the court-appointed vocational case manager's report was not credible, appellants also argue that Straub has not sufficiently demonstrated a loss of earning capacity, because Straub continues to work for the Scottsbluff Police Department and because his wages have increased. Appellants also argue that because Straub is a statutory civil service employee, he cannot suffer a loss of earning capacity.
In Davis v. Goodyear Tire & Rubber Co.,[22] however, we stated:
Earning power, as used in Neb.Rev.Stat. § 48-121(2), is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he or she is engaged or for which he or she is fitted.
We continued:
Thus, the mere fact that after an injury, the employee receives, or is offered, his or her former wages, or a larger sum, does not necessarily preclude recovery of compensation under the workers' compensation statutes.... The fact that an employee is still employed and still paid the same or better does not, of itself, mean he or she has not experienced some loss of earning capacity.[23]
We find appellants' second assignment of error to be without merit.

DVD SHOWED EVIDENCE OF INJURY TO STRAUB
Finally, appellants claim the DVD, found at exhibit 2, does not show that Straub's hip had been injured. As noted, we review the decision of the trial court for clear error and its findings will not be otherwise overturned.[24]
The DVD shows a vehicle sideswipe Straub as he was conducting a routine traffic stop. The vehicle knocked Straub into the stopped vehicle, and then Straub limped away. The DVD later shows Straub stopping the vehicle that hit him, while Straub continued to limp. Appellants argue that Straub is not a credible witness because he told his orthopedist that he had been knocked down but the DVD did not support that claim.
First, we note that our review of the record contains no such statement by Straub. Straub testified that he was struck by a passing vehicle, and the notes from his chiropractor indicate that Straub reported being struck by a vehicle. In its order, the trial court stated that it found Straub's testimony credible and noted that Straub had been injured in the course of his employment in the past but had never made any workers' compensation claims. The trial court also viewed the DVD. Based on the record before us, we find that the trial court did not clearly err in determining that Straub had injured his hip during the first accident. Appellants' third assignment of error is without merit.

CONCLUSION
We find Straub's second accident, which occurred while en route to a required medical appointment for compensable injuries, was also compensable. We also find the *893 trial court did not commit clear error when determining that Straub sustained a 35-percent loss of earning capacity or when finding that the DVD, found at exhibit 2, showed that Straub's left hip was injured.
AFFIRMED.
NOTES
[1] Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.07 (2009).
[2] Money v. Tyrrell Flowers, 275 Neb. 602, 748 N.W.2d 49 (2008).
[3] Id.
[4] Kraus v. Jones Automotive, Inc., 3 Neb.App. 577, 529 N.W.2d 108 (1995), citing Jacobs v. Consolidated Tel. Co., 237 Neb. 772, 467 N.W.2d 864 (1991).
[5] Jacobs v. Consolidated Tel. Co., supra note 4, 237 Neb. at 775, 467 N.W.2d at 866.
[6] Kraus, supra note 4.
[7] 1 Larson & Larson, supra note 1.
[8] Phipps v. Milton G. Waldbaum & Co., 239 Neb. 700, 477 N.W.2d 919 (1991).
[9] Bear v. Anson Implement, Inc., 976 S.W.2d 553 (Mo.App.1998); Lee v. Industrial Com'n, 262 Ill.App.3d 1108, 635 N.E.2d 766, 200 Ill.Dec. 427 (1994); Gayler v. North American Van Lines, 566 N.E.2d 84 (Ind.App.1991).
[10] Manuel v. Davidson Transit Org., No. M2007-01580-CV-R3-WC, 2008 WL 4367492 (Tenn. Spec. Workers' Comp. Panel 2008); Kehr Mid-West Iron v. Bordner, 829 N.E.2d 213 (Ind.App.2005); American Manufacturers Mut. Ins. v. Hernandez, 252 Wis.2d 155, 642 N.W.2d 584 (2002); Taylor v. Centex Construction Co., 191 Kan. 130, 379 P.2d 217 (1963).
[11] Taylor, supra note 10.
[12] Id.
[13] Id.
[14] Id.
[15] Neb.Rev.Stat. § 48-120(2)(c) (Cum.Supp. 2006). See, also, Yarns v. Leon Plastics, Inc., 237 Neb. 132, 464 N.W.2d 801 (1991).
[16] Behrens v. American Stores Packing Co., 228 Neb. 18, 421 N.W.2d 12 (1988); Pavel v. Hughes Brothers, Inc., 167 Neb. 727, 94 N.W.2d 492 (1959).
[17] Kraus, supra note 4.
[18] Jacobs, supra note 5.
[19] See, Behrens, supra note 16; Pavel, supra note 16.
[20] Bishop v. Speciality Fabricating Co., 277 Neb. 171, 760 N.W.2d 352 (2009).
[21] Id.
[22] Davis v. Goodyear Tire & Rubber Co., 269 Neb. 683, 688, 696 N.W.2d 142, 147 (2005).
[23] Id. at 688-89, 696 N.W.2d at 147.
[24] Bishop, supra note 20.