THOMPSON, Presiding Judge.
Flexicrew Staffing, Inc. (“Flexicrew”), appeals from a judgment of the Baldwin Circuit Court (“the trial court”) determining that injuries Hayden D. Champion sustained in a motor-vehicle accident were compensable under the Alabama Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975. In the judgment, the trial court ordered Flexicrew “to provide Champion with all of the benefits to which he is entitled under [the Act] including, but not limited to, medical benefits and temporary total disability benefits for all of the injuries suffered by [Champion] on November 27, 2012.”
The issue whether Champion is entitled to receive permanent-disability benefits is still pending in the trial court.
“'“It is a well established rule that, with limited exceptions, an appeal will lie only from a final judgment which determines the issues before the court and ascertains and declares the rights of the parties involved.”’ Owens v. Owens, 739 So.2d 511, 513 (Ala.Civ.App.1999), quoting Taylor v. Taylor, 398 So.2d 267, 269 (Ala.1981).
*1050 “ ‘A final judgment is one that completely adjudicates all matters in controversy between all the parties.
[[Image here]]
“Eubanks v. McCollum, 828 So.2d 935, 937 (Ala.Civ.App.2002). (citations omitted).”
Adams v. NaphCare, Inc., 869 So.2d 1179, 1181 (Ala.Civ.App.2003). Because the judgment in this case does not completely adjudicate Champion’s claims against Flexicrew, our initial inquiry must be to determine whether the judgment from which Flexicrew appeals is a final judgment capable of supporting an appeal.
“[A] mere compensability determination that awards no relief, other than directing an employer to allow medical treatment, is not a ‘final judgment’ that is subject to appellate review, but is instead reviewable by an appellate court only by a petition for a writ of mandamus. See SouthernCare, Inc. v. Cowart, 48 So.3d 632 (Ala.Civ.App.2009). However, as Fluor Enterprises[, Inc. v. Lawshe, 16 So.3d 96, 99 (Ala.Civ.App.2009),] indicates, the rule is now emerging that when a trial court goes further, and awards medical benefits and temporary-total-disability benefits in addition to determining compensability, the trial court has rendered a final judgment that is susceptible to appellate review. See Fluor Enterprises, 16 So.3d at 99; BE & K, Inc. v. Weaver, 743 So.2d 476, 480 (Ala.Civ.App.1999); and Ex parte DCH Reg’l Med. Ctr., 571 So.2d 1162, 1164-65 (Ala.Civ.App.1990).”
Belcher-Robinson Foundry, LLC v. Narr, 42 So.3d 774, 775-76 (Ala.Civ.App.2010).
Because the judgment from which Flexi-crew appeals determines compensability and awards medical benefits and temporary-total-disability benefits, the judgment is final for purposes of appeal.
The facts in this case are largely undisputed, and the record indicates the following. Flexicrew provides temporary employees to construction companies. At the time of the events made the basis of this action, Champion had been working for Flexicrew for approximately three weeks. He was assigned by Flexicrew to work with White-Spunner Construction, which was building a boatyard and marina at Orange Beach. On the morning of November 27, 2012, Champion was on his knees operating a concrete grinder at the construction site when the grinder slipped and struck Champion in the left leg above the knee. Champion’s leg was cut in the accident, and he reported his injury to his supervisor, Jason McAllister, an employee of White-Spunner. Flexicrew does not dispute the compensability of that injury.
McAllister testified that he thought the cut needed stitches and that he did not “feel comfortable with [Champion] staying and working.” He also said that he believed Champion needed “to go get [the injury] looked at.” However, McAllister said, Champion told him that he felt like he was fine and wanted to go back to work. McAllister provided Champion with first-aid materials, and Champion bandaged his leg with gauze and tape and returned to work. McAllister said that he placed a telephone call to Misty Lomas at Flexicrew to report the accident and to find out where Flexicrew wanted Champion to receive treatment for the injury.
Champion said that he returned to work for about 15 to 30 minutes but that, then, the “pain started kicking in and it started bleeding and started hurting.” He said that the cut bled through the bandage, so he returned to McAllister and told him he did not believe he could continue to work. McAllister said that he told Champion that Flexicrew had instructed Champion to go *1051 to Industrial Medical Center (“IMC”) in Daphne for treatment of the cut.
The parties disputed whether Champion was offered a ride to IMC. Ultimately, however, Champion testified that he did not believe he was in an “emergency situation” and that he would be able to drive himself to IMC. Champion left the construction site, driving his own vehicle to begin the trip to Daphne. About a mile and a half from the construction site, Champion said, he began to feel nauseated and light-headed. While Champion was driving toward IMC, Lomas contacted him and offered to allow him to receive treatment somewhere closer to the construction site, but Champion declined and continued to drive toward Daphne.
On the way to IMC, Champion drove through a red light at an intersection and collided with another vehicle. Champion was seriously injured in the accident, suffering a broken neck, a broken leg, and a broken ankle. Although he does not remember the actual collision or the minutes just before the collision, Champion said that he believed he passed out from loss of blood. Flexierew, on the other hand, presented evidence tending to indicate that Champion’s blood loss before the accident was insufficient to cause him to pass out.
Champion sought workers’ compensation benefits for the injuries he received in the accident. After the hearing on the issue of compensability, the trial court entered a judgment in favor of Champion, finding that the injuries were compensable under the Act and awarding Champion medical benefits and temporary-total-disability benefits for those injuries. The amount of those benefits is not in dispute. Flexierew appealed.
“The standard of appellate review in workers’ compensation cases is governed by § 25-5-81(e), Ala.Code 1975, which provides:
“‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is ‘ “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’
Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Additionally, a trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995). ‘This court’s role is not to reweigh the evidence, but to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom.’ Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 794 (Ala.Civ.App.2002).”
Denmark v. Industrial Mfg. Specialists, Inc., 98 So.3d 541, 543-44 (Ala.Civ.App.2012).
This case presents a question of first impression in Alabama. The issue before us is whether the automobile accident in which Champion was injured arose out of the course of his employment, entitling him to workers’ compensation benefits under the Act. Flexierew argues that the injuries Champion sustained in the automobile accident were not compensable because, it says, those injuries did not arise out of and in the course of his employment. Flexierew maintains that the motor-vehicle *1052 accident was “not a natural and direct consequence of that original laceration” on Champion’s leg. At the hearing, an attorney for Flexicrew argued to the trial court that the injury to Champion’s leg “had to be a direct consequence that actually caused the accident for it to be in the course and scope” of Champion’s employment, that is, to be compensable under the Act. However, the attorney admitted to the trial court that he had no law to support that contention. Champion, on the other hand, argues that the injuries he sustained in the accident are compensable because, he says, in traveling to IMC, he was seeking medical treatment at the location to which he was directed by Flexicrew for an undisputed work-related injury.
Although the Alabama courts may not have been previously presented with this set of facts, numerous other jurisdictions have considered the issue. A Kansas Supreme Court case, Taylor v. Centex Construction Co., 191 Kan. 130, 379 P.2d 217 (1963), explained a rationale for compensa-bility that has been adopted by the courts of many states. In Taylor, the Kansas Supreme Court held that an injury sustained by an employee while traveling to receive medical treatment for a prior com-pensable injury had arisen out of the course of employment. The Kansas court noted that, pursuant to the Kansas Workers’ Compensation Act, an employer is under a duty to furnish medical care for work-related injuries. Likewise, an employee is under a duty to “submit to medical treatment or lose his benefits during the period that he refuses to submit to non-dangerous medical treatment.” 191 Kan. at 136, 379 P.2d at 221. Professor Larson wrote of the Taylor opinion that “[t]he provisions of the [Kansas Workers’ Compensation Act], in turn, become by implication part of the employment contract.” 1 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law § 10.07 (2011). Thus, the “accidental injuries during a trip made pursuant to this statutory and contractual obligation are work connected.” Id.
A majority of the jurisdictions that have considered whether injuries sustained while traveling to or from a location to receive treatment of injuries suffered in a work-related accident have determined that such injuries are compensable.[1] Lar *1053 son’s, § 10.07. Some states appear to have rejected the theory of compensability entirely, however, on the ground that injuries employees sustained while traveling to or from medical treatment did not arise out of the course of employment.[2]
We agree with the majority of jurisdictions that have held that injuries sustained while traveling to see an employer-designated physician for initial treatment of a work-related injury are compensable under the Act. In reaching this conclusion, we have considered our legislature’s mandate to liberally construe the remedial provisions of the Act to effectuate their intended beneficent purposes, see Ala. Acts 1992, Act No. 92-537, § 1. We also have considered that, like Kansas, Alabama’s workers’ compensation law provides that an employer subject to the Act must provide medical care to an injured employee, § 25-5-31 and § 25-5-51, and that an employee risks losing benefits under the Act if he or she refuses to submit to reasonable medical treatment. § 12-5-77(b), Ala.Code 1975. Accordingly, the rationale of the Kansas Supreme Court in Taylor is applicable in Alabama, leading to the conclusion that obtaining medical treatment from a medical provider authorized by the employer is work-related. Thus, we hold that the trial court correctly determined that the injuries Champion sustained in the motor-vehicle accident that occurred as he was traveling from the work site to the health-care facility designated by his employer to obtain initial medical treatment for his work-related injury are compensable.
The undisputed evidence in this case indicates that, at the direction of Flexi-crew, Champion was driving to IMC for treatment of his initial work injury when *1054 the motor-vehicle accident occurred. There is no suggestion that Champion was taking an indirect route or had deviated from the direct route for any purpose, occurrences that might have affected the compensability of the injuries sustained in the motor-vehicle accident. Based on the record before us, we conclude that the trial court properly determined that the injuries Champion suffered in the motor-vehicle accident were compensable. The judgment is therefore due to be affirmed.
AFFIRMED.
PITTMAN, THOMAS, MOORE, and ' DONALDSON, JJ., concur.

. See, e.g., Straub v. City of Scottsbluff, 280 Neb. 163, 169, 784 N.W.2d 886, 890-91 (2010) (Nebraska Workers' Compensation Act provides that if an employee fails to avail himself or herself of medical treatment, he or she can lose workers’ compensation benefits; thus, “an employee’s injury which occurs en route to a required medical appointment that is related to a compensable injury is also compensable, as long as the chosen route is reasonable and practical.”); Shuler v. Gregory Elec., 366 S.C. 435, 442-43, 622 S.E.2d 569, 573 (2005) ("when an employer authorizes an employee to seek medical attention for a pri- or injury and the employee sustains additional injuries while fulfilling her obligation to submit to medical treatment, such additional injuries are sufficiently causally related to employment to be compensable”); Quality Plastics v. Hamilton, 112 Or.App. 175, 176, 827 P.2d 946, 947 (1992); Matter of Font v. New York City Bd. of Educ., 170 A.D.2d 928, 566 N.Y.S.2d 754 (1991) (holding that injuries claimant suffered while traveling to a doctor's office for treatment of another compensable injury were work-related and com-pensable); Moreau v. Zayre Corp., 408 A.2d 1289, 1293-94 (Me.1979) (awarding benefits to claimant who was injured in an automobile accident while driving home after receiving medical treatment for a previously com-pensable hand injury because the employee had a correlative duty to accept medical treatment for the initial compensable injury and, therefore, was fulfilling an implied duty of the employment contract when she was involved in the accident); Berro v. Workmen's Comp. Appeal Bd., 165 Pa.Cmwlth. 298, 645 A.2d 342 (1994) (finding that “but for” driving to see his physical therapist for treatment of his work-related injury, claimant would not have been in the car accident that caused *1053 additional injuries, and therefore the additional injuries were compensable); All American Wheel World, Inc. v. Gustafson, 499 So.2d 876, 877 (Fla.Dist.Ct.App.1986) (finding that the injury claimant sustained in an automobile accident while on his way to receive treatment from a chiropractor for a previous compensable injury was also compensable) (after Gustafson was decided, Florida adopted Fla. Stat. § 440.092(5), which provides that ''[¡Injuries caused by a subsequent intervening accident arising from an outside agency which are the direct and natural consequence of the original injury are not compensable unless suffered while traveling to or from a health care provider for the purpose of receiving remedial treatment for the compensa-ble injury”); and Pedersen v. Maple Island Inc., 256 Minn. 21, 97 N.W.2d 285 (1959) (An employee who received permission from employer to leave work to receive postsurgery treatment for a work-related injury was fatally injured in a motor-vehicle accident on the way home from that treatment. His surviving spouse was entitled to compensation benefits because the accident was held to have arisen out of and in the course of the employee’s employment.).

. See, e.g., Wyoming ex rel. Wyoming Workers’ Safety & Comp. Div. v. Bruhn, 951 P.2d 373, 377-78 (Wyo.1997) (denying benefits to claimant who died while returning from treatment for a compensable injury that had occurred five years earlier because ''[t]he accident was not a hazard of her employment that she would not have been subjected to apart from her job nor did it result from a risk reasonably incident to the character of the business”); Dean v. Chrysler Corp., 434 Mich. 655, 455 N.W.2d 699 (1990) (holding that injuries suffered while en route to treating physician nearly three months after initial injury were not compensable); Farmers’ Gin Co. v. Cooper, 147 Okla. 29, 294 P. 108 (1930) (same); Smith v. National Liquors, Inc., 158 Ind.App. 160, 301 N.E.2d 783 (1973) (holding that slip and fall in treating physician's parking lot was not an accident related to employment); and Kiger v. Idaho Corp., 85 Idaho 424, 380 P.2d 208 (1963) (holding that injuries employee received in motor-vehicle accident while traveling to obtain medical treatment for industrial accident that had occurred nearly one month earlier were not compensable, i.e., they did not arise out of or in the course of employment, because automobile accident causing second set of injuries broke causal connection).